William MIRIN, Plaintiff,

v.

The JUSTICES OF the SUPREME
COURT OF NEVADA et al.,
Defendants.

No. LV 75–149–RDF.

United States District Court,
D. Nevada.

May 11, 1976.

Mark Lemle Amsterdam, New York City, for plaintiff.

Lionel, Sawyer, Collins & Wartman by Samuel S. Lionel, Las Vegas, Nev., for defendants Justices of the Supreme Court of Nevada, David Zenoff, Elmer M. Gunderson, Cameron M. Batjer, John C. Mowbray, Gordon Thompson, individually and in their capacities as Justices of the Supreme Court of Nevada (judicial defendants).

Robert List, Atty. Gen., by Jeffrey N. Clontz, Deputy Atty. Gen., Las Vegas, Nev., for defendants Members of the State Taxicab Authority of Clark County, Manuel Cortez, James Jones, B. J. Handlon, Joseph La Voie (authority defendants).

## DECISION

HAUK, District Judge.

### BACKGROUND FACTS

This matter comes before the undersigned A. Andrew Hauk, sitting as District Judge of the District of Nevada by designation on December 18, 1975, of Ninth Circuit Chief Judge Richard H. Chambers. Plaintiff commenced this action on August 18, 1975, seeking both injunctive and declaratory relief pursuant to 28 U.S.C. 1331 ("Federal Question" jurisdiction), 1343 ("Civil Rights" jurisdiction), 1651 ("All Writs" jurisdiction), 2201 ("Declaratory Judgment" jurisdiction), and 2202 ("Declaratory Judgment"—other relief)[1]; 42 U.S.C. 1983

---

1. § 1331. *Federal question; amount in controversy; costs*

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interests and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff. June 25, 1948, c. 646, 62 Stat. 930; July 25, 1958, Pub.L. 85–554, § 1, 72 Stat. 415.

§ 1343. *Civil rights and elective franchise*

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42

("Civil Rights" action), 1985 ("Civil Rights Conspiracy"—jurisdiction), and 1986 ("Civil Rights Conspiracy"—action for neglect to prevent)[2]; and the First, Fifth, Sixth and

which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote. June 25, 1948, c. 646, 62 Stat. 932; Sept. 3, 1954, c. 1263, § 42, 68 Stat. 1241; Sept. 9, 1957, Pub.L. 85–315, Part III, § 121, 71 Stat. 637.

§ 1651. *Writs*

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction. June 25, 1948, c. 646, 62 Stat. 944; May 24, 1949, c. 139, § 90, 63 Stat. 102.

§ 2201. *Creation of remedy*

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. June 25, 1948, c. 646, 62 Stat. 964; May 24, 1949, c. 139, § 111, 63 Stat. 105; Aug. 28, 1954, c. 1033, 68 Stat. 890; July 7, 1958, Pub.L. 85–508, § 12(p), 72 Stat. 349.

§ 2202. *Further relief*

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. June 25, 1948, c. 646, 62 Stat. 964.

28 United States Code.

2. § 1983. *Civil action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

R.S. § 1979.

§ 1985. *Conspiracy to interfere with civil rights—Preventing officer from performing duties*

(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

*Obstructing justice; intimidating party, witness, or juror*

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

*Depriving persons of rights or privileges*

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of con-

Fourteenth Amendments[3] to the Constitution of the United States. There are two groups of Defendants: one group consists of the five justices of the Nevada Supreme Court being sued in both their individual and their official capacities ("Judicial Defendants"); the second group is composed of the members of the Administrator of the Clark County State Taxicab Authority ("Authority Defendants").

Plaintiff seeks (1) empanelment of a 3-judge court to determine the issues raised; (2) declaratory relief to the effect that ac-

tions of Defendants violate Plaintiff's rights under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution; (3) that this Court preliminarily and permanently enjoin Defendants from enforcing the order staying Nevada District Judge Hays' partial summary judgment for Plaintiff in a pending Nevada State case involving Plaintiff; (4) that this court preliminarily and permanently enjoin Defendants from interfering with the Plaintiff's taxicab operation; (5) that this court preliminary and permanent-

spiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

R.S. § 1980.

§ 1986. *Same; action for neglect to prevent*

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

R.S. § 1981.

42 United States Code.

**3.** TEXT OF AMENDMENTS TO THE CONSTITUTION

AMENDMENT [I]

Congress shall make no law respecting an establishment of religion, or prohibiting the

free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

AMENDMENT [V]

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

AMENDMENT [VI]

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence.

AMENDMENT [XIV]

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

United States Code, Constitution (1972 ed.), pp. 5–8.

ly enjoin Defendants from enforcing Rule 44 of the Nevada Supreme Court Rules, and Rule 46(b) of the Nevada Rules of Appellate Procedure and declare them both unconstitutional; (6) that the Court require the Defendants to disclose the source and amount of their past campaign contributions and of any future contributions; and (7) that the Court issue a preliminary and permanent injunction prohibiting the Defendants from ruling in Nevada State proceedings in which the Plaintiff is a party.

Plaintiff has been operating taxicabs in Las Vegas, Nevada since 1962. For several years the Plaintiff did not have a Certificate of Public Convenience and Necessity, claiming that under the wording of the pertinent Nevada statute it was not required. Plaintiff has been arrested on numerous occasions for his failure to obtain or possess such a Certificate and became somewhat well known in the Las Vegas area for his episodic appearances in litigation. Finally, after gaining considerable public notoriety, Plaintiff in 1965 was able to lobby through the Nevada Legislature a bill allowing him a cab operation in Las Vegas, but apparently limited to one taxicab.

In the same year, as a result of a cab strike against major Las Vegas cab companies not affecting Plaintiff's cab company, a joint agreement was signed by the major cab companies limiting their number of taxis in the Las Vegas area to 200. This agreement ending the strike was approved by the then District Court Judge (now Supreme Court Justice) John Mowbray, February 28, 1966. Then the Board of Clark County Commissioners, the legislative body of Clark County, Nevada, which includes the city of Las Vegas, enacted an ordinance limiting the number of cabs which the various cab companies were allowed to have on the street, and Plaintiff at this time was allocated one taxi by the Board. The Nevada State Public Service Commission reviewed and revised the allocations in December of 1966 enlarging the numbers allocated to the major companies, but continued to limit Plaintiff and two other small companies to one cab each. Shortly there-

after, when Plaintiff was prosecuted for putting two taxis on the Las Vegas Streets, a lower State court held the allocation ordinance to be jurisdictionally illegal and wiped it off the County statute books. Thereupon Plaintiff continued to put more and more taxis on the street until on October 8, 1968, he claimed to have 72 taxis operating in the County and in Las Vegas. On this date, however, the Nevada Supreme Court reversed the lower State court ruling and reinstated the County allocation ordinance. But since the Public Service Commission had scheduled a hearing on a revised allocation at the time of this reversal, the Supreme Court of Nevada issued a Peremptory Writ of Mandate requiring the Public Service Commission to reinstate its December, 1966, allocation order, at least until new hearings could be held and a new allocation plan be determined. The new hearings were held from January through May of 1969. In the meantime, and in April of 1969, the Internal Revenue Service seized and sold Plaintiff's cabs for an outstanding tax debt owed to the Federal Government. And when the sale of the cabs was not enough to completely pay off the debt, in May of 1969 the IRS seized and sold the Plaintiff's cab operating rights under the State and County allocation orders and ordinance.

Plaintiff has continued to operate one taxi claiming that he has always been a Certificate holder of some sort under the applicable legislative enactment which he lobbied through the Nevada Legislature in 1965. The State Taxicab Authority, which by the Nevada Legislature was given the regulation of taxicabs, taken away from the Public Service Commission in July of 1969, set up a program of having Plaintiff's drivers arrested and his cabs impounded, claiming that Plaintiff had no certificated operating rights. This conflict between the Nevada State Taxicab Authority and Plaintiff has resulted in numerous Nevada State court actions and finally the State of Nevada instituted a State court action to enjoin and restrain Plaintiff from operating any taxicab. Plaintiff counterclaimed seeking,

*inter alia,* a review of a new application of Plaintiff for certificated operating rights that had been denied by the Authority. Upon Plaintiff's motion for partial summary judgment on the first twelve counts of the counterclaim, the lower State court on September 3, 1974, granted the relief sought and in the partial summary judgment awarded Plaintiff a new Certificate of Public Convenience and Necessity for operation of sixty-four cabs.

The lower court denied the State's application for a Stay Order but an *ex parte* Stay Order was granted on September 6, 1974, by Defendant Nevada Supreme Court Justice Zenoff, who set a hearing date before the entire Supreme Court *en banc* for three days later. This *en banc* hearing was held on September 9, 1974, *in camera,* with Justice Gunderson recusing himself and withdrawing voluntarily. Plaintiff alleges that he was not allowed to enter the conference room or participate in the *in camera* proceedings, but there is no dispute as to the fact that the attorney representing Plaintiff in this litigation was present. Plaintiff alleges that at this point in time, however, this attorney was no longer really representing him. Plaintiff also complains that he had filed an Affidavit of Prejudice against all five Justices of the Nevada Supreme Court before the hearing was held *in camera* on the Stay Order but that there was never a hearing held on his Affidavit of Prejudice, although Plaintiff contends such is required by Nevada Revised Statutes, Section 1.225. Plaintiff, because the Nevada Supreme Court had granted the Stay Order, was forced to cease all taxicab operations.

In the meantime, the Authority Defendants held a hearing on September 4, 1974, and, since the lower State Court partial summary judgment awarding Plaintiff an allocation of sixty-four cabs was still in question, awarded the Plaintiff the right to operate three taxicabs. But after the issuance of the Nevada Supreme Court Stay Order, Plaintiff was not permitted to operate any cabs at all in the streets of Las Vegas and therefore was not given any Certificate of Necessity for operation of the three cabs that the Authority had allocated to Plaintiff.

Plaintiff alleges generally that these activities of the Judicial Defendants and the Authority Defendants, as well as numerous but undefined orders of the Supreme Court of Nevada, adverse to the Plaintiff, have resulted in violation of his federally protected Constitutional and Civil Rights. So he now seeks relief in the Federal District Court, District of Nevada. We therefore have before us today three motions: *first,* Plaintiff's motion for a three-judge court to be empaneled to hear the issues raised; *second,* Plaintiff's motion for a Preliminary Injunction against any and all continuing conduct of both the Judicial Defendants and the Authority Defendants relating to his taxicab operations; and *third,* the motions of both groups of Defendants to dismiss. We shall discuss these motions individually.

### PLAINTIFF'S MOTION FOR A THREE–JUDGE COURT

Plaintiff's fourth claim alleges that Rule 44, Nevada Supreme Court Rules and Rule 46(b), Nevada Rules of Appellate Procedure are unconstitutional and seeks review by a three-judge court pursuant to 28 U.S.C. 2281 and 2284.[4] As we can note, these

---

**4.** § 2281. *Injunction against enforcement of State statute; three-judge court required*

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of

three judges under section 2284 of this title. June 25, 1948, c. 646, 62 Stat. 968.

§ 2284. *Three-judge district court; composition; procedure*

In any action or proceeding required by Act of Congress to be heard and determined by a ·district court of three judges the composition and procedure of the court, except as otherwise provided by law, shall be as follows:

(1) The district judge to whom the application for injunction or other relief is presented shall constitute one member of such court. On the filing of the application, he shall immediate-

sections require that no interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application thereof is heard and determined by a district court of three judges; and that if such injunction is properly sought, then the procedure and composition of a three judge court is set forth.

■ But, just what are the prerequisites for a three-judge court? The United States Supreme Court in *Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794, 796 (1962) has laid down the initial steps to be followed:

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute."

The district court must also keep in mind when determining the applicability of the three-judge court statute that it is to be construed narrowly so as to avoid increasing the burden on the Federal judiciary and to prevent undue expansion of the Supreme Court's carefully limited appellate jurisdiction. *Board of Regents v. New Left Education Project*, 404 U.S. 541, 543, 545, 92 S.Ct. 652, 654, 30 L.Ed.2d 697, 701 (1972); *Allen v. State Board of Elections*, 393 U.S. 544 (1966); *Phillips v. United States*, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800, 805 (1941). Just how limited are the provisions of the three-judge court statute is exemplified by the Supreme Court in holding that only State statutes of statewide application

ly notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. Such judges shall serve as members of the court to hear and determine the action or proceeding.

(2) If the action involves the enforcement, operation or execution of State statutes or State administrative orders, at least five days notice of the hearing shall be given to the governor and attorney general of the State.

If the action involves the enforcement, operation or execution of an Act of Congress or an order of any department or agency of the United States, at least five days' notice of the hearing shall be given to the Attorney General of the United States, to the United States attorney for the district, and to such other persons as may be defendants.

Such notice shall be given by registered mail or by certified mail by the clerk and shall be complete on the mailing thereof.

(3) In any such case in which an application for an interlocutory injunction is made, the district judge to whom the application is made may, at any time, grant a temporary restraining order to prevent irreparable damage. The order, unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the full court. It shall contain a specific finding, based upon evidence submitted to such judge and identified by reference thereto, that specified irreparable damage will result if the order is not granted.

(4) In any such case the application shall be given precedence and assigned for a hearing at the earliest practicable day. Two judges must concur in granting the application.

(5) Any one of the three judges of the court may perform all functions, conduct all proceedings except the trial, and enter all orders required or permitted by the rules of civil procedure. A single judge shall not appoint a master or order a reference, or hear and determine any application for an interlocutory injunction or motion to vacate the same, or dismiss the action, or enter a summary or final judgment. The action of a single judge shall be reviewable by the full court at any time before final hearing.

A district court of three judges shall, before final hearing, stay any action pending therein to enjoin, suspend or restrain the enforcement or execution of a State statute or order thereunder, whenever it appears that a State court of competent jurisdiction has stayed proceedings under such statute or order pending the determination in such State court of an action to enforce the same. If the action in the State court is not prosecuted diligently and in good faith, the district court of three judges may vacate its stay after hearing upon ten days notice served upon the attorney general of the State. June 25, 1948, c. 646, 62 Stat. 968; June 11, 1960, Pub.L. 86-507, § 1(19), 74 Stat. 201. 28 United States Code.

are proper subjects of three-judge courts. *Moody v. Flowers,* 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); *Rorick v. Board of Commissioners,* 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939); *Ex Parte Public National Bank,* 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202 (1928); *Ex Parte Collins,* 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928).

■ In applying the three requirements of *Idlewild* to the facts of this case, we find that there is at least a formal request for equitable relief as well as a State statute of statewide application. The problem here is whether or not there is a "substantial federal constitutional question." Although there is no hard and fast definition of what a substantial federal constitutional question is, the Supreme Court has recently established some guidelines for the opposite concept of federal constitutional *in* substantiality:

> " 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' *Bailey v. Patterson,* 369 U.S. [31], at 33 [82 S.Ct. 549, at 551, 7 L.Ed.2d 512 (1962)], 'wholly insubstantial,' *ibid.;* 'obviously fictitious,' *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288 [30 S.Ct. 326, 327, 54 L.Ed. 482] (1910); and 'obviously without merit,' *Ex parte Poresky,* 290 U.S. 30, 32 [54 S.Ct. 3, 4–5, 78 L.Ed. 152] (1933). . . A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' " *Goosby v. Osser,* 409 U.S. 512,

518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36, 42 (1973).

It is well settled that the determination of the substantiality or insubstantiality of an alleged federal constitutional issue should be decided upon by the single district court judge. There appears to be some question, however, whether the judge merely performs a ministerial function or engages in a discretionary judgment in determining substantiality.

■ But the law in the Ninth Circuit has been settled in *Mandel v. Hutchinson,* 336 F.Supp. 772, 776 (C.D.Cal.1971), aff'd, 494 F.2d 364, 365 (9th Cir. 1974) and *California Teachers Association v. Newport Mesa Unified School District,* 333 F.Supp. 436, 441 (C.D.Cal.1971). In those cases, the courts explicitly adopted the First Circuit's view of the district judge's function in the convening of a three-judge court. That circuit speaking through Chief Judge Aldrich in the case of *Merced Rosa v. Herrero,* 423 F.2d 591, 593 (1st Cir. 1970), held that "in determining whether the complaint alleges a case appropriate for a three-judge court the district judge performs a judicial, as distinguished from a ministerial, function" and accordingly, he must ascertain whether the "request possesses a reasonable degree of legal merit." In determining whether the instant complaint "possesses a reasonable degree of legal merit" we must be mindful of the "serious drain upon the federal judicial system" which the needless convening of a three-judge court can produce. *Phillips v. United States,* 312 U.S. 246, 250, 61 S.Ct. 480, 483, 85 L.Ed. 800, 804 (1941).[5]

Of course, the convocation of a three-judge court, in a situation where the federal court typically abstains from exercising

---

5. As *Phillips* further pointed out, the statute authorizing a three-judge court is to be treated "not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such" 312 U.S. at 251, 61 S.Ct. at 483, 85 L.Ed. at 805. And as Mr. Justice Frankfurter observed in *Florida Lime and Avocado Growers, Inc. v. Jacobsen,* 362 U.S. 73, 92–93, 80 S.Ct. 568, 579–580, 4 L.Ed.2d 568, 580 (1960) (dissenting opinion) quoted with approval by Mr. Justice Harlan in *Swift*

*and Co. v. Wickham,* 382 U.S. 111, 128, 86 S.Ct. 258, 268, 15 L.Ed.2d 194, 205 (1965):

> "[T]he convening of a three-judge trial court makes for dislocation of the normal structure and functioning of the lower federal courts . . . and direct review of District Court judgments by this Court not only expands this Court's obligatory jurisdiction but contradicts the dominant principle of having this Court review decisions only after they have gone through two judicial sieves."

jurisdiction is a most inexcusable depletion of judicial energy and it would be foolhardy to advocate that the district judge should, when confronted with this type of situation, still request the convening of this tri-partite bench. A fortiori, to request the convening of a three-judge court in a case lacking a basis for federal jurisdiction is even more imprudent.

Consequently, the instant request for the convening of a three-judge court must be denied, as it is deficient for both of the aforestated reasons.

Other circuits have concurred in this treatment of the district judge's role in determining the applicability and propriety of a three-judge court. *Lion Manufacturing Corp. v. Kennedy,* 117 U.S.App.D.C. 367, 330 F.2d 833, 840–841 (1964); *Crossen v. Brekenridge,* 446 F.2d 833, 837 (6th Cir. 1971); *Jacobs v. Tawes,* 250 F.2d 611, 614 (4th Cir. 1957). Thus, there is no question but that the district judge has the power to determine not only "substantiality" of the federal question, but also other jurisdictional matters: for example, whether or not a fact pattern presents a live case or controversy, *Lion Manufacturing Corp. v. Kennedy, supra;* whether a litigant has the power to sue, *Pichler v. Jennings,* 347 F.Supp. 1061 (S.D.N.Y.1972); whether the court may intervene in an ongoing state proceeding, *Veen v. Davis,* 326 F.Supp. 116 (C.D.Cal. 1971).

So we must now determine whether the case before us presents a substantial federal constitutional claim and, also, whether all jurisdictional requirements here have been met.

Plaintiff's federal constitutional claim deals with the alleged federal unconstitutionality of two Nevada Appellate Courts procedural rules. The first one, Rule 44 of the Nevada Supreme Court Rules provides:

"*Person may appear in his own behalf.* Nothing in these rules shall be so construed as to prevent any person from appearing in his own behalf in any court in this state except the supreme court."

The other rule, Rule 46(b) of the Nevada Rules of Appellate Procedure provides:

"*Appearances in Proper Person.* No party, except a habeas corpus petitioner, may appear in proper person before the Supreme Court."

Plaintiff contends that everyone has a federal constitutional right, premised on both the due process clause and the equal protection clause of the United States Constitution—5th and 14th Amendments—to personally present any claim or contention in any and all non-criminal appellate proceedings. Plaintiff argues that this right is both historic and significant, attempting to buttress this argument with the recent U.S. Supreme Court holding in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This Court is not persuaded by comparison of the facts of the *Faretta* decision to those of this case before us. *Faretta* was a case brought specifically under the 6th Amendment and not under the due process (5th Amendment) or equal protection (14th Amendment) clauses, or under any other protective provisions of the federal Constitution. The crucial facts that *Faretta* was a criminal case and not a civil case, and that it was a trial and not an appeal, are of overwhelming importance in determining its applicability to this case before us. The Sixth Amendment specifies: "In all *criminal* prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." (*Emphasis added*). This obviously deals only with the rights one has in a *criminal* prosecution and must be limited exclusively to such prosecutions. The most perfunctory reading of *Faretta* discloses that the Supreme Court was dealing *only* with the Sixth Amendment as applied to the States through the Fourteenth Amendment. As the Court noted: "The question before us now is whether a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so. Stated another way, the question is whether a State may constitutionally hail a per-

son into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *Faretta* at 807, 95 S.Ct. at 2527, 45 L.Ed.2d at 566.

The Court in *Faretta,* in distinguishing the federal constitutional nature of defendant's right to conduct his own defense at the *trial* level from other (*appellate*) stages of the judicial process, added: "And in *Price v. Johnston,* 334 U.S. 266 [68 S.Ct. 1049, 92 L.Ed. 1356], the Court, in holding that a convicted person had no absolute right to argue his own appeal, said this holding was in 'sharp contrast' to his 'recognized privilege of conducting his own defense at the trial.' *Id.,* at 285 [68 S.Ct. 1049, at 1060, 92 L.Ed. 1356]." *Faretta* at 816, 95 S.Ct. at 2531, 45 L.Ed.2d at 571. Turning to *Price,* we find the Supreme Court elaborating on the distinction between *trials* and *appeals,* with the criminal defendant having a right to handle his trial but limited on appeal by the discretion of the United States Court of Appeals in allowing or disallowing him to represent himself. Later the Court noted that the United States Courts of Appeals have discretionary power to allow a criminal prisoner to personally argue his appeal:

"The discretionary nature of the power in question grows out of the fact that a prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate court. *Schwab v. Berggren,* [143 U.S. 442, 12 S.Ct. 525, 36 L.Ed. 218] *supra.* The absence of that right is in sharp contrast to his constitutional prerogative of being present in person at each significant stage of a felony prosecution, [citations omitted] and to his recognized privilege of conducting his own defense at the trial. Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U.S.C.A. § 394, to parties in all the courts of the United States to 'plead and manage their own causes personally.' To the extent that this section permits parties to conduct their own oral arguments before appellate courts, it must be modified in its application to prisoners. Oral argument on appeal is not an essential ingredient of due process and it may be circumscribed as to prisoners where reasonable necessity so dictates.

A prisoner's right to participate in oral argument on appeal is accordingly to be determined by the exercise of the discretionary power of the circuit court of appeals under § 262." *Price v. Johnston,* 334 U.S. 266, 285–86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356, 1369 (1947).

Thus, the Supreme Court in *Price* made it unequivocally clear that the right to argue personally a criminal appeal does not rise to federal constitutional dimensions. It follows that a civil defendant's right to orally argue a civil appeal cannot even approach federal constitutional parameters.

Plaintiff utterly fails to cite any authority supporting his claimed right to argue personally his case in the Nevada State Supreme Court civil appellate proceeding. We find that Plaintiff's reliance on *Faretta* is totally misplaced and insufficient to give rise to a substantial federal constitutional question. *Faretta* and *Price* so effectively demolish Plaintiff's contention that any further consideration of it would be a travesty and a futile exercise of legal logic.

This Court must, therefore, and does find that Plaintiff's attack upon the constitutionality of Rule 44 and Rule 46(b) is wholly devoid of merit, is completely frivolous and contrivedly fictitious. As such it does not set forth any substantial federal constitutional question. For these reasons, Plaintiff's Motion for a Three-Judge Court should be and hereby is denied.

Now, since this case is properly before a single district judge, we shall go on and consider the Defendants' Motions to Dismiss.

## DEFENDANTS' MOTIONS TO DISMISS

Both the Judicial Defendants and the Authority Defendants have filed separate mo-

tions to dismiss which we shall consider independently.

## A. *Motion of Authority Defendants.*

Only the first claim of the Complaint involves the Authority Defendants. They argue three essential points in their motion to dismiss: (1) that no jurisdiction exists, (2) that official immunity protects them, and (3) that the Complaint fails to state a claim upon which relief can be granted against them.

 As we noted at the outset, Plaintiff claims jurisdiction exists as to the Authority Defendants under numerous federal statutes and the 1st, 5th, 6th and 14th Amendments to the United States Constitution (Footnotes 1 through 4, *supra*), but other than his application for a three-judge district court, which we have already disposed of adversely to him, he seeks only declaratory relief and an injunction for alleged violation of federal constitutional and civil rights. Authority Defendants concede that the claim against them is brought as a federal question under 28 U.S.C. 1331 and deals expressly with allegations of violations of the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. However, Authority Defendants argue that the matter in controversy does not exceed the requisite $10,000.00 for federal question jurisdiction. Plaintiff alleges that the amount in controversy exceeds $10,000.00 and that his monetary loss without the injunctive and declaratory relief he seeks would be in excess of $2,000,-000.00. In a complaint for injunctive relief, it is the well founded rule that the amount in controversy is the value of the right to be protected or the extent of injury to be prevented. See, *Hunt v. New York Cotton Exchange*, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821 (1907); *Glenwood Light & Water Co. v. Mutual Light, Heat and Power Co.*, 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174 (1915). Plaintiff's claimed right or privilege in question is the right to operate 64 taxicabs without interference on the streets of Las Vegas. The value of this right or privilege to operate such cabs would obviously be far in excess of $10,000.00 in any reasonable computation. This Court cannot in good faith find that the value of this claimed right or privilege to the Plaintiff does not exceed $10,000.00. Therefore, Plaintiff invokes jurisdiction properly under 28 U.S.C. § 1331(a) (Federal Question Jurisdiction). Since this basis of jurisdiction is sufficient there is no need to consider or review other jurisdictional allegations.

Authority Defendants next assert that they were acting within the scope of their official capacities and are thereby protected by official immunity from suits against them either in their individual or official capacities. There is little question but that if this were a suit for damages against State officials acting within the scope of their discretionary official duties, the cloak of official immunity would protect them against this litigation. However, the question of immunity becomes more complicated when the relief sought is injunctive or declaratory. Since the United States Supreme Court decision in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) the Courts have been more willing to allow a suit against State officials if it involves equitable relief. Plaintiff has alleged in his complaint that he is being deprived of federally protected rights and that therefore this case is proper under the ruling of *Ex parte Young.* As the Supreme Court later held in *Scheur v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90, 97 (1974):

". . . since *Ex Parte Young,* . . ., it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law. *Ex Parte Young* teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he 'comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct. The State has no power to impart to him any immunity from respon-

sibility to the supreme authority of the United States.' *Id.*, at 159–160 [28 S.Ct. 441, at 454]. (Emphasis supplied.)"

■ It appears clear that, when there is violation of a federally protected right, broad official immunity will only apply to actions for damages. *See also, Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) and *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Authority Defendants' attempts to dismiss on the grounds of official immunity must fail.[6]

■ The final grounds upon which the Authority Defendants seek to dismiss is for a failure to state a claim upon which relief can be granted pursuant to F.R.Civ.P. 12(b)(6). For the purposes of this motion, the Court must deem all factual allegations as true. However, legal conclusions and opinions do not have to be accepted as true. After thoroughly and completely reviewing the voluminous and convoluted allegations of the Complaint, we cannot find any facts giving rise to a claim upon which the Plaintiff can have relief granted.

■ The Complaint sets forth facts that go back to occurrences in 1962 when Plaintiff first got started in the taxicab business in Las Vegas. It shows that the Plaintiff was in and out of the Nevada State courts for various and sundry law suits, both civil and criminal, and has in fact gained some public notoriety from his contentious judicial struggles with the Authority Defendants and the Judicial Defendants. Plaintiff has suffered some setbacks in his series of litigative battles, but he has also gained some meaningful victories. Despite this, Plaintiff on information and belief alleges that his setbacks from the Authority Defendants were the direct result of some type of conspiracy to violate his rights protected by the federal Constitution. Such bare allegations cannot be

deemed true for the purposes of this Motion to Dismiss, since they are not facts but mere legal conclusions. The facts actually pleaded, in and of themselves, do not establish a pattern or even isolated instances which could, even if true, establish a conspiracy. For this reason, we necessarily find that Plaintiff's Complaint is without merit and fails to state a claim upon which relief can be granted, and therefore find and conclude that the Authority Defendants' Motion to Dismiss should be granted.

### B. *Motion of Judicial Defendants.*

Judicial Defendants argue that this case should be dismissed for three reasons: (1) that they are protected from suits by judicial immunity, (2) that the federal district court is not the proper forum to review the holdings of the Nevada State Supreme Court and (3) that the district court cannot intervene in proceedings that are pending in the Nevada State Supreme Court.

Plaintiff in that portion of his suit which is alleged against the Judicial Defendants seeks both declaratory and injunctive relief, but again here, as in the case of the Authority Defendants, he does not seek damages.

■ Taking the Judicial Defendants' first contention, the doctrine of judicial immunity arose out of the common law to protect the integrity and smooth operation of the judicial systems, both State and Federal. This common law absolute immunity of judges for "acts committed within their judicial jurisdiction" has "roots extending to the earliest days of the common law." See *Imbler v. Pachtman*, 424 U.S. 409, 423, 96 S.Ct. 984, 991, 47 L.Ed.2d 128, 139 (1976), 44 U.S.L.W. 4250, 4255, footnote 20 (March 2, 1976); *Floyd v. Barker*, 12 Coke 25 (1608). As adopted in the United States in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871) at p. 347, 20 L.Ed. 646:

---

6. We are not unmindful of the recent decision of Chief Judge Roger D. Foley of this District of Nevada wherein he refused to extend the doctrine of qualified governmental immunity to the Board of Regents of or the University of Nevada, *Adamian v. University of Nevada*, 359

F.Supp. 825, 831–834 (D.Nev.1973), rev'd and remanded on other grounds, 523 F.2d 929 (9th Cir. 1975). However, since we do not rely on any qualified immunity doctrine with respect to Authority Defendants it is quite apparent that *Adamian, supra,* has no applicability here.

"For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful."

\* \* \* \* \* \*

"The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country."

It is to be noted that, while *Bradley* involved a suit for damages, judicial immunity was held by the Supreme Court to apply to *all* civil actions. So also did the Supreme Court hold in *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 294 (1967), again involving a suit for damages but supporting judicial immunity against *all* civil actions, including actions brought under 42 U.S.C. 1983 (Civil Rights actions, whether "an action at law [damages], suit in equity [injunctive or declaratory relief], or other proper proceedings for redress."):

"It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

"We do not believe that this settled principle of law was abolished by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities. Accordingly, this Court held in *Tenney v. Brandhove*, 341 U.S. 367 [71 S.Ct. 783, 95 L.Ed. 1019] (1951), that the immunity of legislators for acts within the legislative role was not abolished. The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have specifically so provided had it wished to abolish the doctrine."

The Supreme Court goes on to point out in footnote 9, p. 555, 87 S.Ct. p. 1218, 18 L.Ed.2d p. 295 of *Pierson*:

"Since our decision in *Tenney v. Brandhove, supra,* the courts of appeals have consistently held that judicial immunity is a defense to an action under § 1983. See *Bauers v. Heisel*, 361 F.2d 581 (C.A. 3d Cir. 1966), and cases cited therein."

While there has developed an abortive line of authority from a mis-reading of *Pierson*—holding that because it involved a suit for damages, judicial immunity does not 'protect a judge against a suit for injunction—the clear fact is that the Supreme Court in *Pierson* upheld the doctrine of judicial immunity as to all civil actions, even those brought under 42 U.S.C. 1983, whether actions "at law, suit in equity, or other proper proceedings for redress," and then applied the doctrine to the particular suit at law for damages before it.

For example, there are some district court cases which turn *Pierson* on its head and go so far as to say that "judicial immunity applies only to damage actions, and not to actions seeking equitable relief."

*Wallace v. McDonald,* 369 F.Supp. 180 (E.D.N.Y.1973); *U. S. v. McLeod*, 385 F.2d 734, 738 (5th Cir. 1974); *Jacobsen v. Schaefer*, 441 F.2d 127, 130 (7th Cir. 1971); *U. S. v. Clark*, 249 F.Supp. 720 (S.D.Ala.1965); *Phillips v. Cole*, 298

F.Supp. 1049 (N.D.Miss.1968); *Bramlett v. Peterson*, 307 F.Supp. 1311, 1321 (M.D. Fla.1969); *Rakes v. Coleman*, 318 F.Supp. 181 (D.C.Va.1970); *Cassidy v. Ceci*, 320 F.Supp. 223 (D.Wis.1970); *Stephen v. Drew*, 359 F.Supp. 746 (D.C.Va.1973); *Larsen v. Gallogly*, 361 F.Supp. 305 (D.R. I.1973); *U. S. v. Blackfeet Tribe et al.*, 369 F.Supp. 562 (D.Mont.1973).

Another and better line of authority in the Ninth Circuit correctly reads *Pierson* and applies the all-pervasive doctrine of judicial immunity to actions at law for damages in favor of State judges:

*Larsen v. Gibson*, 267 F.2d 386 (9th Cir. 1959), cert. den. 361 U.S. 848, 80 S.Ct. 106, 4 L.Ed.2d 87 (1959); *John v. Gibson*, 270 F.2d 36 (9th Cir. 1959), cert. den. 361 U.S. 970, 80 S.Ct. 601, 4 L.Ed.2d 549 (1959); *Johnson v. MacCoy*, 278 F.2d 37 (9th Cir. 1959); *Sires v. Cole*, 320 F.2d 877, 879 (9th Cir. 1963); *Agnew v. Moody*, 330 F.2d 868 (9th Cir. 1964); *Harvey v. Sadler*, 331 F.2d 387 (9th Cir. 1964); *Haldane v. Chagnon*, 345 F.2d 601 (9th Cir. 1965); *See also*: *Oppenheimer v. Stillwell*, 132 F.Supp. 761 (S.D.Cal.1955); *Haigh v. Snidow*, 231 F.Supp. 324 (S.D. Cal.1964); *Hagan v. State of California*, 265 F.Supp. 174 (C.D.Cal.1967); *Miller v. Reddin*, 293 F.Supp. 216 (C.D.Cal.1968).

Finally, the most recent Ninth Circuit cases have taken the further and next logical step in correctly reading *Pierson* by holding that the doctrine of judicial immunity protects judges in proceedings seeking injunctive or other equitable relief. In other words, they shield the judge with the cloak of judicial immunity when he is acting in his judicial capacity and carrying out his judicial functions, whether the action be at law for damages, or in equity for injunction or declaratory relief, or "in other proper proceedings for redress," as provided in 42 U.S.C. 1983—*all* civil actions—just as the Supreme Court did in *Pierson*.

In *Mackay v. Nesbett*, 285 F.Supp. 498, 503 (D.Alaska 1968), aff'd, 412 F.2d 846 (9th Cir. 1969), cert. den., 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969), Chief Judge Plummer in ruling on an application for an injunction against the entire Alaska Supreme Court, refused to grant it on the ground of absolute judicial immunity, specifically stating:

"The doctrine of judicial immunity applies to a proceeding in which injunctive or other equitable relief is sought, as well as to suits for money damages. *Gay v. Heller*, 252 F.2d 313 (5th Cir. 1958); *Peckham v. Scanlon*, 241 F.2d 761 (7th Cir. 1957); *Tate v. Arnold*, 223 F.2d 782 (8th Cir. 1952); *Rhodes v. Houston*, 202 F.Supp. 624 (D.Neb.1962); *Thompson v. Baker*, 133 F.Supp. 247 (W.D.Ark.1955). *The reasons for the rule of judicial immunity apply regardless of the nature of the relief sought.*" (Emphasis supplied).

This *Mackay* case, with Chief Judge Plummer correctly reading the Supreme Court in *Pierson*, and following its reasoning with unassailable logic, is exactly on point with the case before us, ours involving the Nevada Supreme Court and his involving the Alaska Supreme Court. Affirmed by the Ninth Circuit and with certiorari denied by the Supreme Court, it lays down the law for us in the Ninth Circuit and we must follow it by granting the Judicial Defendants' Motion to Dismiss.

See also, *Smallwood v. U. S.*, 358 F.Supp. 398, 403 (E.D.Mo.) where Judge Poof in language strikingly identical to Chief Judge Plummer's said:

"The doctrine of judicial immunity also applies to proceedings in which injunctive or other equitable relief is sought as well as to suits for money damages. The reasons for the judicial immunity rule apply regardless of the nature of the relief sought. *Tate v. Arnold*, 223 F.2d 782 (8th Cir. 1955); . . . ."

And in *Atchley v. Greenhill*, 373 F.Supp. 512, 514 (S.D.Texas 1974) the Court also held that the protective cloak of immunity clothes the judge in declaratory relief actions, stating:

"Secondly, the complaint fails to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), because of judicial immunity. The Civil Rights Act does not abrogate that bar. [Citations omitted]

Plaintiff contends that judicial immunity only applies to suits for money damages, citing *United States v. McLeod*, 385 F.2d 734, 738 n. 3 (5th Cir. 1967). The recent case of *Hill v. McClennan*, 490 F.2d 859, No. 73–2686 (5th Cir. 1974) refutes plaintiff's distinction. In a per curiam opinion, the court (the panel of which included Judge Wisdom, author of *McLeod*) affirmed dismissal of a § 1983 suit against a state judge and others. The dismissed action sought both damages and an order voiding a state judgment."

This is the latest word to come out of the Fifth Circuit, and certainly supports the present law in the Ninth Circuit that judicial immunity is all pervasive, covering both law actions for damages and equitable actions for injunctive or declaratory relief. There has been no case overturning or even implying that the rule in the Ninth Circuit is or should be any different than the rule of the *Mackay* case. We are bound by existing law, and we therefore must hold that the Judicial Defendants are protected by the defense of judicial immunity, even though the claim here is for equitable relief. It is our conviction that this is in every respect consistent with the holding in *Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974) wherein the court applied judicial immunity to all judicial activities which a judge may properly conduct, i. e. all things over which he has jurisdiction. Because of this doctrine of judicial immunity, the Court finds and concludes that the Motion to Dismiss of Judicial Defendants should be granted with prejudice.

Even if we were to ignore the case law of the Ninth Circuit and find that the Judicial Defendants are not protected by judicial immunity, there are other reasons that would force this Court to grant their Motion to Dismiss. The First Claim, alleged conspiracy, would have to be dismissed for the reasons this court previously outlined in concluding that the Motion to Dismiss of the Authority Defendants should be granted.

■ The Second and Third Claims seek to have us review certain judicial actions taken by the Nevada Supreme Court clearly within that Court's jurisdiction. The law is overwhelming that, generally speaking, lower federal courts have absolutely no power to sit in review of State court opinions. *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). This is true whether the State court is a trial court or on the appellate level, as is the Nevada Supreme Court. As the United States Supreme Court stated in *Atlantic C.L.R. Co. v. Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1742, 26 L.Ed.2d 234, 240 (1970):

> "While the lower federal courts were given certain powers in the 1789 Act [Judiciary Act of 1789], they were not given any power to review directly cases from state courts, and they have not been given such powers since that time. Only the Supreme Court was authorized to review on direct appeal the decisions of state courts."

The Plaintiff seeks to avoid the application of *Atlantic C.L.R. Co.* by stating that he is not seeking a review of *any one* decision, but rather is seeking review of the totality of actions taken by all of the Nevada Supreme Court Justices in their official as well as their individual capacities. The Plaintiff would seek to convince us that the members of the Nevada Supreme Court were acting somehow extrajudicially in carrying on their judicial functions. This of course is a purely gratuitous conclusion, and need not be accepted as true on the motion to dismiss.

■ This question of whether the district court is the proper forum to review the Nevada Supreme Court's actions and decisions is a factual determination since the law on the question is unmistakable. The argument of Plaintiff that he is not seeking review of the Nevada Supreme Court's judicial action is non-binding on us. It is necessary to view the facts set forth in the Complaint, viewed in the light most favorable to plaintiff, but this does not mean we take all the words, claims, contentions and allegations of Plaintiff at face value.

■ Of the five Nevada Supreme Court Justices, the Complaint's allegations never even mentions two of the Justices by name, Thompson and Batjer. Thus, there cannot possibly be any claim that they acted individually to deprive Plaintiff of his constitutional rights. It appears that the only problem with these two unnamed Justices is the nature of the judicial decisions they rendered, and such decisions are not reviewable by a federal district court. Justice Mowbray is named only because as a lower court trial judge, he approved an agreement ending the taxicab strike when he was a State district judge. This action was taken over ten years ago and no actions other than judicial functions are even mentioned with respect to Justice Mowbray. Certainly the approval of the agreement to end the strike is a judicial action performed within the jurisdiction of the district court. Ours is not the proper tribunal to review this or any of the decisions in which Justice Mowbray participated as a member of the Nevada Supreme Court. Justice Zenoff is only mentioned as having signed a temporary three-day stay order, and again this is clearly within his judicial duties and therefore not reviewable. Justice Gunderson is mentioned in connection with his one-time attorney-client relationship with Checker Cab and for his alleged reprimand of Plaintiff's attorney. As to the former allegation, the only relevance that this could have would be to serve as a possible basis for his recusal or disqualification on any matters coming before him involving Checker Cab or other cab companies. Justice Gunderson did in fact recuse and disqualify himself from sitting on two separate matters involving Plaintiff: *Mirin v. Clark County Taxi Cab Authority*, 518 P.2d 597 (Nev. 1974) and *State v. Mirin*, No. 123367 (now on appeal, pending decision by the Nevada Supreme Court). The Complaint does not anywhere allege that Justice Gunderson even participated in any case affecting Plaintiff's interests. As to the alleged reprimand of Plaintiff's attorney, the Nevada Supreme Court Justices have the inherent right and duty as judges to insure the efficient administration of justice, including effective methods of insuring court decorum and dignity, right to the point of issuing a so-called "reprimand." And, even assuming that the reprimand was perhaps uncalled for or unjustified, nevertheless it was in furtherance of a judicial matter that was pending before the Court and therefore within the scope of the authority of Justice Gunderson. We are unwilling to hold that the judicial control of an attorney on one minor occasion in Court is sufficient to give rise to an action for equitable relief by the attorney. And we have found no law suggesting in the slightest degree that we should do so.

What the Complaint and its five "claims" come down to in the end are bare allegations of a hypothetical conspiracy. The actions taken and decisions rendered by the Judicial Defendants—the Justices of the Nevada Supreme Court—in dealing with Plaintiff, as alleged in the complaint, give us no inkling of any alleged wrongs or misdeeds being performed by the Justices. Rather, it appears that Plaintiff was displeased and disgruntled with rulings made by the Nevada Supreme Court and therefore initiated this action, using such inflammatory terms as "unlawful conspiracy," "selectively persecuting Plaintiff," "prejudice" and "corruption" in order to side-step the copious case law marking the Federal district court as the improper forum to attack Nevada State Supreme Court decisions. Plaintiff cannot avoid the impact of established case law by pleading conclusions that are unsupported by any factual allegations. Thus we dispose of the First, Second and Third Claims of the Complaint.

■ The Fourth Claim alleges that Rule 44 of the Nevada Supreme Court Rules and Rule 46(b) of the Nevada Rules of Appellate Procedure are both unconstitutional. The Judicial Defendants allege that there is not enough specificity to give the Plaintiff standing to attack the Rules. Standing is to be considered in connection with the requirement that there be an actual case or controversy. *Association of Data Processing Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

The question of whether there is standing is once again necessarily a factual one in which we view the facts pled in the light most favorable to Plaintiff. *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 828 (1941). Without reiterating all details of the allegations, we find that there is nothing in the pleadings which suggests or from which we can infer that, actually, and in fact, Plaintiff was denied access to the *in camera* proceedings of the Nevada Supreme Court because of any application of the aforesaid Rules. All Plaintiff alleges is that during the *in camera* hearing, he entered the Justices' conference room and was asked to leave. There is no allegation of why he was asked to leave, and it could have been any number of reasons unrelated to the application of the Rules. There is nothing in the pleadings which indicates the Justices were aware that Plaintiff was seeking to represent himself at the *in camera* hearing. The fact that there was no other representation of Plaintiff at the *in camera* proceeding does not indicate that any Rules were violated. So far as we know, Plaintiff had no right to be in the Justices' conference room during the *in camera* proceeding in the first place. Nor did he have any right to have an attorney present. Since there is an insufficient nexus between the claimed unconstitutionality and the alleged injury, so as to give Plaintiff the requisite stake in the outcome necessary to support standing, no standing exists for Plaintiff.

It should be noted further that Plaintiff has not alleged or attempted to allege any threat of future injury by the application of Rule 44 or Rule 46(b). In this state of affairs, we cannot hear the Fourth Claim, because it does not state a claim upon which relief can be granted. F.R. Civ.P. 12(b)(6). *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

In the Fifth Claim, Plaintiff asserts that the Justices received campaign contributions from certain taxicab companies in competition with him. Plaintiff complains that Nevada State law does not require

disclosure of the contributions and that nondisclosure violates the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff claims, somewhat tenuously, that this nondisclosure has had some sort of a "chilling effect" on his unspecified "rights." Plaintiff has not alleged any other injury, concrete or abstract, resulting from the nondisclosure of the campaign contributions. We view Plaintiff's allegations as insufficient to satisfy the Article III "case or controversy" requirement of the United States Constitution. To attempt to consider or determine the question raised by the Fifth Claim would be nothing more than an improper advisory opinion. *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 271 (1971).

Plaintiff's glib use of the words "chilling effect" does not axiomatically or automatically give rise to a justiciable case or controversy. In *Laird v. Tatum, supra,* the Supreme Court held that the mere existence of a data-gathering system with its alleged "chilling effect" by invasion of privacy does not give rise to a case or controversy when in fact there is no showing of objective present harm or of a concrete and specific future harm. In *O'Shea v. Littleton, supra,* there was a similar lack of imminent harm alleged in any specific manner to give rise to or satisfy the threshold Article III requirements. Although *O'Shea* did not involve First Amendment protections, the rule of specific harm applies equally to actions brought for alleged violation of the protections of the First Amendment. In *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), the Supreme Court once more failed to allow a suit by those that suffered only an abstract rather than concrete injury, holding they lacked the necessary "standing."

Our careful examination of the facts pleaded by Plaintiff convinces us that there are no facts alleged which would permit us to hear or determine any of the claims of the Complaint on the basis of violation of the Federal Constitution. Plaintiff has not

alleged that he personally has been or will be harmed, but only that "a chilling effect exists on the part of litigants and their attorneys whereby such litigants and attorneys are constrained to seek [sic! Does he mean "restrained from seeking?"] disclosure of such campaign contributions for fear of retribution or reprisal." Plaintiff does not say that his actions in the law suits in Nevada dealing with his taxicab operations, or indeed even the taxicab operations themselves, have been adversely affected because of nondisclosure of campaign contributions received by the Nevada Supreme Court Justices. Nor does he, nor could he allege that the effect of specific campaign contributions was such that he did not receive even-handed justice in the Nevada courts, and particularly the Nevada Supreme Court. We find that there was no concrete injury or "chilling effect" sufficient to merit further discussion of the issue of campaign contributions to the Supreme Court Justices.

But a final word—the Nevada Legislature has enacted comprehensive legislation requiring the disclosure of campaign contributions. *Nevada Revised Statutes,* § 293. Under this law, there must be disclosed to the Secretary of State all contributions in amounts greater than $500.00. If Plaintiff seeks to attack this legislation, he must do so specifically and in the proper forum. Here, Plaintiff has not attacked or alleged any constitutional problems with this Nevada legislation.

For the foregoing reasons, this Court finds and concludes that the Motion to Dismiss of the Judicial Defendants is meritorious and well taken and therefore should be granted with prejudice.

## ADDITUR AND CONCLUSION

Before finally disposing of the Three-Judge Court application of Plaintiff, and before finally determining the merits of the respective Motions to Dismiss filed by the Judicial Defendants and the Authority Defendants, it seems appropriate and enlightening to discuss, briefly, what we may call the two "A"s, which compel definitive rulings against calling a Three-Judge Court and in favor of the Motions to Dismiss.

1. *The First "A"—the Anti-injunction Statute, 28 U.S.C. 2283.*[7]

This Anti-injunction Act obviously imposes an all-inclusive "hands-off" doctrine upon us, prohibiting every United States court from interfering with any State court proceedings, subject to only three exceptions: (1) as expressly authorized by Act of Congress; (2) where necessary in aid of the Federal court's jurisdiction; or (3) to protect or effectuate a Federal court's judgments. As applied by the United States Supreme Court in unmistakable strictures, the Anti-injunction Statute is an implacable barrier to Plaintiff's Complaint and each and every claim therein attempted to be alleged.

As laid down by Mr. Justice Black in *Atlantic C.L.R. Co. v. Engineers,* 398 U.S. 281, at 286–87, 90 S.Ct. 1739, at 1743, 26 L.Ed.2d 34, at 241 (1970):

"On its face the present Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. The respondents here have intimated that the Act only establishes a 'principle of comity,' not a binding rule on the power of the federal courts. The argument implies that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions. We cannot accept any such contention. In 1955 when this Court interpreted this statute, it stated: 'This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition quali-

---

7. § 2283. Stay of State court proceedings

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. June 25, 1948, c. 646, 62 Stat. 968. 28 United States Code.

fied only by specifically defined exceptions.' *Amalgamated Clothing Workers v. Richman Bros.*, 348 U.S. 511, 515–516 [75 S.Ct. 452, 455, 99 L.Ed. 600] (1955). Since that time Congress has not seen fit to amend the statute and we therefore adhere to that position and hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld. Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court."

And again at 294–296, 90 S.Ct. at 1747, 26 L.Ed.2d at 245:

"First, a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear. This rule applies regardless of whether the federal court itself has jurisdiction over the controversy, or whether it is ousted from jurisdiction for the same reason that the state court is. Cf. *Amalgamated Clothing Workers v. Richman Bros., supra*, 348 U.S. at 519–520 [75 S.Ct. 452, at 457–458]. This conclusion is required because Congress itself set forth the only exceptions to the statute, and those exceptions do not include this situation. Second, if the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be *'necessary in aid of'* that jurisdiction. While this language is admittedly broad, we conclude that it implies something similar to the concept of injunctions to 'protect or effectuate' judgments. Both

exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. Third, no such situation is presented here. Although the federal court did have jurisdiction of the railroad's complaint based on federal law, the state court also had jurisdiction over the complaint based on state law and the union's asserted federal defense as well. *Jacksonville Terminal, supra*, [394 U.S. 369] at 375–377, 390 [89 S.Ct. 1109, 1113–1115, 1122, 22 L.Ed.2d 344]. While the railroad could probably have based its federal case on the pendent state law claims as well, *United Mine Workers v. Gibbs*, 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966), it was free to refrain from doing so and leave the state law questions and the related issue concerning preclusion of state remedies by federal law to the state courts. Conversely, although it could have tendered its federal claims to the state court, it was also free to restrict the state complaint to state grounds alone. Cf. *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 [84 S.Ct. 461, 11 L.Ed.2d 440] (1964). In short, the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts. *Kline v. Burke Constr. Co.*, 260 U.S. 226 [43 S.Ct. 79, 67 L.Ed. 226] (1922); cf. *Donovan v. Dallas*, 377 U.S. 408 [84 S.Ct. 1579, 12 L.Ed.2d 409] (1964). Therefore the state court's assumption of jurisdiction over the state law claims and the federal preclusion issue did not hinder the federal court's jurisdiction so as to make an injunction *necessary* to aid that jurisdiction. Nor was an injunction necessary because the state court may have taken action which the federal court was certain was improper under the *Jacksonville Terminal* decision. Again, lower federal courts possess no power whatever to sit in

direct review of state court decisions. If the union was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the Florida appellate courts and ultimately, if necessary, in this Court. Similarly if, because of the Florida Circuit Court's action, the union faced the threat of immediate irreparable injury sufficient to justify an injunction under usual equitable principles, it was undoubtedly free to seek such relief from the Florida appellate courts, and might possibly in certain emergency circumstances seek such relief from this Court as well. Cf. *Natural Gas Co. v. Public Serv. Comm'n*, 294 U.S. 698 [55 S.Ct. 634, 79 L.Ed. 1235] (1935); *United States v. Moscow Fire Ins. Co.*, 308 U.S. 542 [60 S.Ct. 129, 84 L.Ed. 456] (1939); R. Robertson & F. Kirkham, Jurisdiction of the Supreme Court § 441 (R. Wolfson & P. Kurland ed. 1951). Unlike the Federal District Court, this Court does have potential appellate jurisdiction over federal questions raised in state court proceedings, and that broader jurisdiction allows this Court correspondingly broader authority to issue injunctions 'necessary in aid of its jurisdiction.'"

### 2. The Second "A"—the Abstention Doctrine

Not too long ago, in a series of cases involving interference by Federal District Courts in State criminal proceedings, the Supreme Court reiterated and reemphasized the import of certain fundamental tenets underlying our Federal system relative to Federal-State judicial independence.[8] Once more, Mr. Justice Black speaking for the Court, in the case of *Younger v. Harris*, 401 U.S. 37, 43, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) chronicles the Federal Court's long standing aversion to interference with the rightful independence of the States. Comparing a Congressional Act of 1793 which

unconditionally provided "[N]or shall a writ of injunction be granted to stay proceedings in any court of a state," 1 Stat. 335, c. 22, § 5, with 28 U.S.C. § 2283 [the Anti-Injunction Act] its present day successor, Mr. Justice Black graphically illustrates how few and minor have been the exceptions granted from the flat prohibitory language of the old Act. While admitting that the precise reasons for the long-standing public policy against Federal interference with State functions have never been specifically identified, Justice Black remarks that:

> "[W]hat the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris, supra,* at 44, 91 S.Ct. at 750, 27 L.Ed.2d at 676.

Thus we see that Federal abstention is based on principles of comity.

Moreover, the Supreme Court has extended this doctrine of "Abstention" to include possible improper interference with State *civil* proceedings as well as State *criminal* proceedings, pointing out that while the prohibition leaves room for federal injunctive intervention in certain exceptional cases—where "irreparable injury is 'both great and immediate,'" where the state law is "flagrantly and patently violative of express constitutional prohibitions," or where there is a showing of "bad faith, harassment or . . . other unusual circumstances that would call for equitable relief" —nevertheless it would be up to the District Court on remand to determine whether the doctrine of "Abstention" should be invoked in a *civil* proceeding in the light of its application to *criminal* proceedings. *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct.

---

8. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 695 (1971); *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 764, 27 L.Ed.2d 701 (1971); *Dyson v. Stein,* 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; *Byrne v. Karalexis,* 401 U.S. 216, 90 S.Ct. 1123, 25 L.Ed.2d 394 (1971).

2151, 32 L.Ed.2d 705 (1971), the Court stating as follows at 230–231:

"In *Younger,* this Court emphatically reaffirmed 'the fundamental policy against federal interference with state criminal prosecutions.' 401 U.S., at 46 [91 S.Ct. 746, at 751]. It made clear that even 'the possible unconstitutionality of a statute "on its face" does not in itself justify an injunction against good-faith attempts to enforce it.' 401 U.S., at 54 [91 S.Ct. 746, at 755]. At the same time, however, the Court clearly left room for federal injunctive intervention in a pending state court prosecution in certain exceptional circumstances—where irreparable injury is 'both great and immediate,' 401 U.S., at 46 [91 S.Ct. 746, at 751], where the state law is ' "flagrantly and patently violative of express constitutional prohibitions," ' 401 U.S., at 53 [91 S.Ct. 746, at 755] or where there is a showing of 'bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief.' 401 U.S., at 54 [91 S.Ct. 746, at 755]. In the companion case of *Perez v. Ledesma,* 401 U.S. 82 [91 S.Ct. 764, 27 L.Ed.2d 701], the Court said that '[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.' 401 U.S., at 85 [91 S.Ct. 746]. See also *Dyson v. Stein,* 401 U.S. 200, 203 [91 S.Ct. 769, 771, 27 L.Ed.2d 781].

 \* \* \* \* \* \*

"In so concluding, we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding. These principles, in the context of state criminal prosecutions, were canvassed at length last Term in *Younger v. Harris,,* 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] and its companion cases. They are principles that have been emphasized by this Court many times in the past. *Fenner v. Boy-*

*kin,* 271 U.S. 240 [46 S.Ct. 492, 70 L.Ed. 927]; *Spielman Motor Sales Co. v. Dodge,* 295 U.S. 89 [55 S.Ct. 678, 79 L.Ed. 1322]; *Beal v. Missouri Pac. R. Co.,* 312 U.S. 45 [61 S.Ct. 418, 85 L.Ed. 577]; *Watson v. Buck,* 313 U.S. 387 [61 S.Ct. 962, 85 L.Ed. 1416]; *Williams v. Miller,* 317 U.S. 599 [63 S.Ct. 258, 87 L.Ed. 489]; *Douglas v. City of Jeannette,* 319 U.S. 157 [63 S.Ct. 877, 87 L.Ed. 1324]; *Stefanelli v. Minard,* 342 U.S. 117 [72 S.Ct. 118, 96 L.Ed. 138]; *Cameron v. Johnson,* 390 U.S. 611 [88 S.Ct. 1335, 20 L.Ed.2d 182]. Today we decide only that the District Court in this case was in error in holding that, because of the anti-injunction statute, it was absolutely without power in this § 1983 action to enjoin a proceeding pending in a state court under any circumstances whatsoever." *Id.* at 243, 92 S.Ct. at 2156, 32 L.Ed.2d at 718.

As Chief Justice Burger, concurring with Justices White and Rehnquist, points out, at 244, 92 S.Ct. at 2163, 32 L.Ed.2d at 718:

"Therefore, on remand in this case, it seems to me the District Court, before reaching a decision on the merits of appellant's claim, should properly consider whether general notions of equity or principles of federalism, similar to those invoked in *Younger,* prevent the issuance of an injunction against the state 'nuisance abatement' proceedings in the circumstances of this case."

See, generally, Wright, LAW OF FEDERAL COURTS 2d ed. pp. 196–208 (West Publishing Co. 1970) wherein the origins and developments of the various theories of the "Abstention Doctrines" as he terms them, are discussed. In reviewing the Supreme Court decisions mandating "abstention" from interference in State civil proceedings, Professor Wright highlights two in particular:

(1) *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) "where the federal court defers to avoid interference with state activities, dismissal of the action, rather than retention of jurisdiction pending a state determination, is normal-

ly appropriate." WRIGHT, *op. cit.,* p. 200.

And (2) *Alabama Public Service Comm. v. Southern R. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) where he quotes the Supreme Court at p. 349 of *Alabama Public Service Comm.:* "As adequate state court review of an administrative order based upon predominantly local factors is available to appellee [Plaintiff here], intervention of a federal court is not necessary for the protection of federal rights." Wright, *id.* p. 200.

For Ninth Circuit Cases, see the following: *Kinney v. Lenon,* 447 F.2d 596 (9th Cir. 1971); *Rivera v. Freeman,* 469 F.2d 1159 (9th Cir. 1972); *Mandel v. Hutchinson,* 336 F.Supp. 772 (C.D.Cal.1971) aff'd, 494 F.2d 364 (9th Cir. 1974); *Reese v. Nixon,* 347 F.Supp. 314, 316 (C.D.Cal.1972); *Georgeades v. Long,* 379 F.Supp. 484, 486 (C.D.Cal.1973).

██ Turning to the case before us, it is beyond cavil that here we cannot find great and immediate irreparable injury to Plaintiff, nor any Nevada State law flagrantly and patently violative of express Federal constitutional provisions, nor any bad faith, harassment nor other unusual circumstances that would call for federal equitable relief by way of injunctive interference with Nevada State Administrative (Authority Defendants) or Judicial (Judicial Defendants) proceedings, criminal or civil. In his taxicab dispute with the Nevada Authority Defendants and Judicial Defendants, Plaintiff has adequate remedy and relief available in the State courts and eventually appeal or certiorari to the United States Supreme Court for vindication of any putative State violation of his Constitutional or Civil Rights.

No problems have been laid upon Plaintiff—no vexations, no harassment, no irreparable injury, no flagrant or patent violation of his Federal rights—except those problems, vexations, harassments and injuries self inflicted by Plaintiff in his continuous, contentious, vexatious and notorious exploits of litigation. The criminal proceedings brought against him, whether administrative or judicial, were and are legal, proper and non-vexatious. Whatever Plaintiff has suffered or is suffering was and is self-initiated, self-started, self-caused, self-propelled and indeed self-suffered. So also in the civil proceedings in which Plaintiff has participated and is still participating, whatever Plaintiff has suffered or is suffering was and is self-initiated, self-started, self-caused, self-propelled and indeed self-suffered.

Moreover, in all his troubles, Plaintiff has had his halls and forums open and available by his own allegations and admitted activities—at all times open and available to him and to counsel of his own choosing, whether throughout the Nevada State Legislative chambers, the Nevada State Administrative Agencies, such as the Taxicab Authority (Authority Defendants) and the Public Utilities Commission; as well as throughout the Nevada State Judicial System—the trial courts (District Courts) and the appellate courts, including the Nevada State Supreme Court (Judicial Defendants). And—what is most important—Plaintiff has pursued his remedies and activities vigorously, openly and without hindrance or impediment throughout each and all of these forums. Finally, from there he could have gone on to the United States Supreme Court, but for some reason has chosen not to. His failure to do so cannot be ascribed to any mysterious, malicious, bad-faith motive, activity, action or proceeding—good or bad— of the Nevada forums. It has been his own decision, or perhaps that of his counsel, or perhaps one even made jointly by him and his counsel. But in any event, he cannot avoid the consequences of it.

It follows that Plaintiff has absolutely no basis for seeking our aid in the federal district court which must under all of the authorities we have discussed and of which we are aware, abstain from interfering here with the proceedings involving Plaintiff in the State of Nevada legislative, administrative and judicial forums. They were and remain open, free and available to Plaintiff

with final recourse to the highest forum in the country, the United States Supreme Court. He will be left to them, his remedies there, the determinations there made.

## ORDER

By reason of and in accordance with the foregoing Decision, which shall also constitute findings of fact and conclusions of law pursuant to F.R.Civ.P. 52,

IT IS HEREBY ORDERED:

(1) That counsel for Defendants, if they so desire, may prepare, serve and lodge additional Findings of Fact and Conclusions of Law and shall prepare, serve and lodge a separate Judgment, not inconsistent with this Decision, in favor of Defendants and against Plaintiff, within thirty (30) days of the date hereof, objections if any by counsel for Plaintiff to be prepared, served and lodged, within thirty (30) days thereafter, said Judgment to provide for dismissal of Plaintiff's Complaint and each and every claim therein attempted to be alleged with prejudice unless Plaintiff files an Amended Complaint alleging other and different facts, if so minded and able to do so, verified under oath or upon proper affirmation under penalty of perjury within thirty (30) days of entry of said Judgment.

(2) That the Clerk serve copies of this Decision upon all of the parties herein by serving their respective attorneys of record by mail.

LET JUDGMENT BE ENTERED ACCORDINGLY.