In re Wayne Carl STEWART, Paulette (NMN) Stewart, Debtors.

In re Thomas (NMN) DUKES, Hattie Mea Dukes, Debtors.

In re Sylvester Lovell MAYFIELD, Jr., Mary Lee Mayfield, Debtors.

In re Thomas Franklin BARNES, Wanda Dale Carey Barnes, Debtors.

Bankruptcy Nos. 80–01823, 80–01886 to 80–01888.

United States Bankruptcy Court, E. D. Virginia, Norfolk Division.

April 21, 1981.

John R. Robins, Jr., Asst. U. S. Trustee, Hampton, Va., on behalf of the interim trustees, William R. Moore, Jr., Smithfield, Va., and John M. Cloud, Norfolk, Va.

Stanley E. Sacks, Sacks, Sacks, Perkins & Larkin, Norfolk, Va., for Richard S. Harman.

### MEMORANDUM OPINION ON ATTORNEY'S FEES

HAL J. BONNEY, Jr., Bankruptcy Judge.

This proceeding came upon applications of the interim trustees for examination of fees charged the above-captioned debtors by their attorney, Richard S. Harman. The unusual circumstances underlying the cases are as follows.

Harman is a Norfolk based attorney who, in the diligent pursuit of an expanded clientele, advertised low-cost legal services in local publications. His advertised fee varied from a high of $200 for an individual, no-asset chapter 7 case to the present low of $170.

In the Stewart, Dukes and Mayfield cases Harman disclosed the following fees: $100 had been paid for costs, $900 in fees remained to be paid, for a total charge of $1000. In Barnes, $150 had been paid leaving a balance of $500 to be paid for a total of $650.

After Attorney Harman learned that the trustees intended to challenge these fees as being unreasonable, he filed an amended disclosure statement in the Stewart, Dukes and Mayfield cases. Instead of $900 to be paid, the statement reflected a balance of $700 to be paid in the Stewart case and $500 in each of the Dukes and Mayfield cases. He did not reduce the fee in the Barnes case.

A review of the files involved reveals several interesting things. In general, all of the debtors were jointly liable on the debts scheduled. In practical terms this means that the attorney did not incur substantially more work by filing a joint petition for bankruptcy in contradistinction to an individual petition, although the personal information reflected in the statement of affairs is, of course, different for each person.

474

These are the specifics. In Stewart the debtors sought to discharge $7066 in total debts. Of this the husband is solely liable for $1500, on two debts, the wife for $200, one debt, and the balance are joint obligations. The Dukes are jointly liable on all scheduled debts. The Barnes are jointly liable for all but $940 of scheduled debts in the amount of $14,733. In Mayfield the total scheduled debts are $12,706. Of this total the wife is solely liable for approximately $2300, two debts, and the husband is solely liable for $600 on a single debt. The balance are joint obligations.

In essence, Attorney Harman was faced with scheduling a maximum of two additional creditors each in the Stewart and Mayfield cases. Although the amount of additional work involved here should not be gainsaid, it is clearly not of monumental complexity.

At the hearing Attorney Harman explained his fee arrangement. He testified that the advertised fee was a "cash discount" proposition. Since the debtors did not have the cash to pay the fee, other arrangements were made. Although he vehemently denied that he was charging a financing fee, Attorney Harman stated that he was accepting a risk that he would not be paid; he minimized this risk by charging these debtors $900.

Attorney Harman indicated that the quoted fee contemplated additional work over and above preparation of the petition and appearances at the meeting of creditors and the discharge hearing. These include a homestead deed, applications to avoid liens and to redeem property, and "reaffirmation" agreements. He also charges for what he terms an "ipso facto defense," meaning normal defense of the debtor's position.

In the two cases [Barnes and Stewart] Attorney Harman provided immediate notice to all creditors. Commendable but unnecessary given the integrity of the local credit industry. In individual situations this might be necessary, but certainly not routinely in every case to all creditors. An application to avoid a lien was filed in the Stewart case.

The trustees have brought before the Court two rather important and, indeed, basic issues. One we shall grab by the horns and resolve as a specific duty of the Court. It is in the matter of reasonable attorney fees. Attorney Harman observes that he and perhaps other attorneys would be pleased "to have the guidance of the Court." Therefore, this is a "landmark" decision for this little corner of the world.

The other issue has ethical overtones and considerations and rather novel ones, too, it would appear.

Here follows a copy of a typical newspaper advertisement of Attorney Harman:

## LEGAL SERVICES

- UNCONTESTED DIVORCE. **$150**

- LEGAL SEPARATION AGREEMENT **100**

- BANKRUPTCY (individual) **170**
  (or Chapter 13 Wage-Earner Plan)

- NAME CHANGE (with consent) **50**

- ADOPTION. (with consent) **150**

- REAL ESTATE CLOSINGS (negotiable)

Above fees do not include out-of-pocket expenses, financing, homestead deed, lien avoidances, re-affirmations, redemptions or contested matters.

**622-9143**

**RICHARD S. HARMAN**
ATTORNEY AT LAW
201 Granby Mall, Suite 403
Granby Mall at City Hall Ave.
Norfolk, Va. 23510

(1) Is the advertising of Attorney Harman deceptive? The ads speak of a $170 fee, but for a husband and wife the fee can actually be $900 plus $100 in costs. Are the clients "baited in?"

(2) Is an undue advantage taken of clients when the "cash-discount" price is $170, but the "financed" price for a couple develops to $900?

This issue has been raised and must be, ought to be, resolved. It is the duty of a

highly professional body, the bar, to police its own. The Court has an interest in being assured that the persons who appear before it are lawfully and ethically represented. Therefore, the Court DIRECTS the trustees, or the U. S. Trustee for them, to investigate the ethical questions which arise and to refer the matter to the appropriate disciplinary committee of the bar. In re Devers, C.C.H. Bankruptcy Law Reports, ¶ 67,861 (D.C., District of Columbia, 1981).

Returning now to the issue which is our clear prerogative to decide, 11 U.S.C. 329(b), it may be framed thusly: Does the compensation here exceed the "reasonable value" of the services?

The guidelines:

(1) The basic service in a typical bankruptcy includes interviewing for information, counselling, preparation of the schedules, representation at the section 341 meeting of creditors and representation at the discharge hearing. It may also include setting forth the exemptions to which the debtor is entitled and routine contact with creditors.

■ Any attorney, all attorneys, must make it clear to clients from the onset what the basic service includes and what the "extras" may be and what they will cost.[1]

■ (2) Additional services are often required in a bankruptcy and the attorney is entitled to a reasonable additional fee for these extraordinary matters. These would include defense of a dischargeability suit, seeking to avoid a lien, redemption of property, "reaffirmation" agreements and preparation of a homestead deed. Since these are directly tied to a bankruptcy, collateral to it, "reasonable" would require great care. Except for a trial, much of this is purely ministerial. But a reasonable additional fee is justified.

■ Caveat: An attorney must not needlessly utilize additional services to increase the total compensation. It would serve no purpose other than an attorney's to charge a sizeable fee to redeem property or to avoid a lien on junk whose value may be little more than the fee.

(3) Husband and wife may now file a joint petition with but a single filing fee. 11 U.S.C. § 302. This is sensible and greatly expedites the administration of what is really a single case. The saving in time for all—debtors, attorney, creditors and clerk—is considerable. Like the marriage vow of man and women becoming one, their financial affairs quickly become intertwined, one.[2]

■ Consequently, a double fee is not justified. Extremely little between the two is different. A single fee would be too little, for the personal information (name, occupation etc.) is distinct and occasionally one has a separate debt or two which does not involve the other spouse. All in all, we have seen thousands of these petitions and they are almost Siamese.

A double fee is not justified; it was not permitted under the Act.[3] Some argue that a single fee is quite enough, but while this Court is of the opinion a double fee is not justified, it does believe something in addition to a single fee is appropriate and deserved. For instance, when the standard fee was $350 under the Act [see footnote 3], the usual fee charged by attorneys for both husband and wife was $500 and the Court considered that entirely reasonable.

In addition to considering the evidence, the Court has carefully reviewed all of the case files pertaining hereto. They are all no asset cases. It is undisputed that nothing of complexity has arisen in any of the

---

1. This is not unlike the undertaker who explains the basic service and charge and advises that if the family wants singing, this will be extra.

2. We pioneered in permitting husband and wife to file jointly on a single petition perhaps as early as 1974, requiring as was the law, a fee from each and assigning each a case number. This has worked well here for several years.

3. Under the Bankruptcy Act, the fees were prescribed by the United States District Court as a part of the Bankruptcy Rules for the Eastern District of Virginia. "Such fee shall not exceed the sum of $350.00, except in unusual cases where, upon application, a larger allowance is clearly justified." Rule 5(c).

cases or estates. Except for the Stewart case where an application to avoid a lien was required, there have been no court proceedings in any of them. Homestead deeds were filed in all four of the cases to set forth exemptions.

If there were ever routine, uneventful cases, here they are.

■ Ethical considerations aside, the Court is of the opinion it is not reasonable to charge more for a "financed" case. Equity would direct that Attorney Harman should be bound by the rate he quoted. If he is entitled to interest thereupon a note that is another matter. He states that if a client cannot pay the $170, the price jumps to the old Act rule price of $350 each; for a couple, 2 × $350 = $700. This accounts for $700 of the $900. This is unreasonable. This is a court of equity and it is both unreasonable and inequitable to permit such disparity.

Two truths beg to be heard: (1) 2 × $350 = $700 is not a reasonable charge; it is completely unreasonable and (2) the Court feels he is bound by the fee for which he said he could handle a bankruptcy case.

Attorney Harman has expressed a willingness, indeed has offered to the trustees, to adjust the fees downward, suggesting $500. However and obviously, the Court's decision must be based upon its own independent approach to the issue.

■ In recapitulation to this point, the Court believes $170 to be the reasonable basic feel in these instant cases. For the other spouse an additional fee is justified, but not an additional $170. Upon a $170 basis, $85 would be a reasonable fee for the second spouse.

Many, most, cases require the preparation and filing of a homestead deed in order for the head of the household to claim the exemptions to which he is entitled pursuant to § 34–4 of the Code of Virginia, as amended. A reasonable fee for this under the instant circumstances would be up to $50, depending upon the length and complexity.

Now, with the above guidelines in mind, to be specific, the following fees are found to be reasonable, the Court having reviewed each case file.

| No. 80-01823 | |
|---|---|
| Wayne Stewart | $170 |
| Paulette Stewart | 85 |
| Homestead Deed | 50 |
| Application to avoid lien | 75 |
| | $380 |

| No. 80-01886 | |
|---|---|
| Thomas Dukes | $170 |
| Hattie Dukes | 85 |
| Homestead Deed | 50 |
| | $305 |

| No. 80-01887 | |
|---|---|
| Sylvester Mayfield | $170 |
| Mary Lee Mayfield | 85 |
| Homestead Deed | 50 |
| | $305 |

| No. 80-01888 | |
|---|---|
| Thomas Barnes | $170 |
| Wanda Barnes | 85 |
| Homestead Deed | 50 |
| | $305 |

The facts touching upon the instant cases are unique. As has been stated, since a fee of $170 was quoted, it should be adhered to. But what would a reasonable fee be, by way of dictum and guidance to the bar, under different circumstances? Other than being reasonable, 11 U.S.C. § 329(b), this is difficult to state. There is no longer a ceiling as previously existed under the District Bankruptcy Rules, for it was the intent, clear purpose of the Congress in enacting the Code to be better pay bankruptcy practitioners based upon "the cost of comparable services other than in a case under this title." 11 U.S.C. § 330(b). See the extensive legislative history.

Therefore, what is reasonable would be the cost of comparable, nonbankruptcy

services and this would vary according to the expertise of the practitioner and the complications of the case. Further, considerable consideration would be due the prevailing rate in the community for a consumer bankruptcy.

It would be unwise to precisely define the fee. To do so would place the matter in a proverbial straight-jacket resulting in great rigidity when, instead, an intangible unwritten standard should prevail to which practitioners adhere.

Really, problems in the realm of attorneys' fees have rarely arisen. It has been my observation that great fairness, a compelling reasonableness have prevailed in this community. Only the obvious exceptions to the prevailing spirit have come before the Court.

A word about cost is in order. Attorney Harman charges $100 to cover the cost of a case, to-wit: the filing fee, $60; and the $14 fee for recording the homestead deed. The remaining $26, he states is added for postage, photocopying and the like. Costs shall be *actual* costs and shall not include items which may be expended.

IT IS SO ORDERED.