**In re Peter KONTARATOS and Valerie Kontaratos, Debtors.**

**Appeal of William H. TUCKER, United States Trustee.**

Bankruptcy No. 81–9013.

United States Bankruptcy Appellate Panel, First Circuit.

Nov. 12, 1981.

Dwight D. Meier, Washington, D. C., with whom Thomas S. Martin, Acting Asst. Atty. Gen., David Epstein, Tracy J. Whitaker, Dept. of Justice, Washington, D. C., were on brief, for appellant.

Louis H. Kornreich, Bangor, Maine, with whom Goodman, Goodman & Kornreich, Bangor, Maine, were on brief, for appellee.

Before LAWLESS, GLENNON and VOTOLATO, Bankruptcy Judges.

GLENNON, Bankruptcy Judge.

This matter is before the Panel upon an appeal by the United States trustee (the "trustee") of a bankruptcy court order directing the trustee to investigate alleged unlawful acts by two members of the Chapter 11 Official Unsecured Creditors Committee (the "Committee"). The Chapter 11 debtors (Appellees, herein) challenged the representativeness of two members of the Committee appointed by the trustee, because of alleged violations of certain state criminal and usury statutes by those two creditors. By order of the Bankruptcy Court for the District of Maine dated February 19, 1981, the two creditors were suspended from the committee pending the trustee's investigation into the alleged statutory violations by the creditors in question and to report his findings to the court.[1] The trustee made an immediate appeal of that order to this Panel, and the Panel has

---

1. See 10 B.R. 370 (Bkrtcy.D.Me.1981).

already allowed the trustee's Motion for Expedited Appeal. Jurisdiction exists pursuant to Title 28 of the United States Code Section 1482. 28 U.S.C. § 1482. The parties have presented two issues for appeal:

1. Whether the express requirement that the trustee appoint a committee of creditors carries with it the implicit obligation to investigate and insure the representativeness of that committee and,

2. Whether the bankruptcy court's express power to change the membership or size of a committee also implies the authority to order the trustee to investigate complaints about the committee's alleged lack of representativeness?

For the reasons that appear below, we feel that the bankruptcy court's order of February 19, 1981 should be vacated and the case remanded for further findings in accordance with our decision.

## DISCUSSION

At issue before the Panel in this appeal are questions bearing upon the very nature of the dual roles of the bankruptcy judge and the U.S. trustee in a bankruptcy case. This is not a question of isolated significance, but one which may occur repeatedly, albeit not in the present form that this appeal takes. The decision today focuses both on the scope of the trustee's responsibility and the breadth of the bankruptcy court's power, and involves far greater issues than mere judicial interpretation of statutory language. We are concerned with the impact and implementation of an experimental program, designed to study the feasibility of removing from the bankruptcy judge certain administrative duties heretofore carried out by the judge, and in turn placing those responsibilities in the hands of a United States trustee, an independent officer to be appointed and supervised by the Justice Department and the office of the Attorney General of the Unit-

ed States. As the legislative history of the Bankruptcy Code indicates, the establishment of the office of United States trustee is designed to accomplish the separation of judicial and administrative functions currently performed by bankruptcy judges.

[The U.S. trustee] was not intended to replace private trustees, but rather to perform the supervisory and appointing functions handled by bankruptcy judges under the Act, and to monitor trustee performance in more detail than practicable. The United States trustee will relieve the bankruptcy judges of their current administrative and supervisory role, and will become the principal administrative officers in the bankruptcy system.[2]

Section 224(a) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598 added Chapter 39 to Title 28 of the United States Code to create the Office of the United States trustee. 28 U.S.C. §§ 581–589. Chapter 39 provides, inter alia, that the Attorney General shall appoint the U.S. trustee for each pilot district enumerated,[3] may appoint Assistant U.S. trustees,[4] and shall provide general supervision, coordination and assistance to U.S. trustees.[5] It is clear, therefore, that the U.S. trustee program as established is to be supervised by and is otherwise subject to the authority of the Executive Department of the federal government. However, Chapter 39 of Title 28 of the U.S. Code merely establishes the procedure for creating the office of United States trustee and establishes the Attorney General as a general supervisor over the program. The substantive duties, responsibilities and function of a U.S. trustee are contained entirely in Chapter 15 of the new Bankruptcy Code. 11 U.S.C. §§ 1501, et seq. The Congressional Record with regard to Chapter 15 is particularly helpful in examining the duties of the trustee and his role in a bankruptcy proceeding.

Under present law bankruptcy judges are required to both resolve disputes and

---

2. H.R.Rep.No. 595, 95th Cong., 1st Sess. 101 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6062.

3. 28 U.S.C. § 581.

4. 28 U.S.C. § 582.

5. 28 U.S.C. § 586(c).

supervise the administration of bankruptcy cases. The main purpose of the U.S. Trustee is to remove administrative duties from the bankruptcy judge leaving the bankruptcy judge free to resolve disputes untainted by knowledge of matters unnecessary to a judicial determination. The U.S. trustee is responsible for supervising panels of private trustees in the district or districts covered by the pilot program. The U.S. trustee, rather than the court, in a pilot district will appoint trustees, supervise administration of bankruptcy cases, and exercise any other function prescribed by the Attorney General, such as presiding at first meetings of creditors, related to bankruptcy administration.[6]

The clearest example of the transfer of responsibility can be seen in comparing the two sections of the Code which are at issue before us. Section 1102(a) has two numbered paragraphs: the first directs *the court* to appoint a committee of creditors holding unsecured claims, while the second provides that if the court determines that additional committees are necessary to assure adequate representation of creditors, *the court* shall appoint such committee.[7] In contrast, Section 151102 contains two subsections (a) and (b), which contain virtually identical language to that used in § 1102(a)(1)(2), but for the substitution of "the United States trustee" for "the court".[8] Thus it is clear that the trustee's duty to appoint committees of creditors is no different than that of a bankruptcy judge in a non-pilot district.

The language of the legislative history of the Code, the purpose behind it, and the language contained in the statute itself establish a framework for the courts to use. Neither the lower court nor the appellees cited any specific language in the Code to support the court's decision below. Rather, the court and the appellees have referred to "inherent power" and "implicit authority". The order below relies upon the statutory language of the Bankruptcy Code to imply the imposition of certain duties on the trustee. More specifically, the bankruptcy judge first concluded that the responsibility to appoint a creditors committee carries with it the responsibility to investigate charges vis-a-vis the appointments that are made. Thus, according to the judge, when the responsibility to appoint is transferred from the judge to the U.S. trustee, the U.S. trustee also assumes the responsibility to investigate.[9]

■ What appears to have happened is a blurring of the administrative and judicial roles. A bankruptcy judge, or a U.S. trustee, when appointing a creditors committee is performing a ministerial task. The level of inquiry is superficial and involves simply a qualification that the person is an unsecured creditor and is willing to serve. 11 U.S.C. § 1102(b). Section 1102(b) sets forth the criteria for appointment to a committee, and even the court below recognized the "precatory" nature of the language of qual-

---

**6.** 124 Cong.Rec. H 11,707 (Sept. 1978); S 17,424 (October 6, 1978).

**7.** 11 U.S.C. § 1102 reads:

(a)(1) as soon as practicable after the order for relief under this chapter, *the court* shall appoint a committee of creditors holding unsecured claims. (emphasis added)

(2) on request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. *The court* shall appoint any such committees. (emphasis added)

**8.** 11 U.S.C. § 151102 reads:

(a) as soon practicable after the order for relief under Chapter 11 of this Title, *the United States trustee* shall appoint a committee of creditors holding unsecured claims.

(a) on request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. *The United States trustee* shall appoint any such committees. (emphasis added)

**9.** This reasoning presumably would not be applicable to a non-pilot district, for we assume that even the court below would agree that bankruptcy judges in non-pilot districts should not have to conduct investigations of the kind sought here.

ification.[10] The language contained in § 1102(b)(1) allows latitude in appointing a committee that is manageable and representative in light of the circumstances of the case.[11] A noted commentator on the subject of bankruptcy has this to say:

> Once having fulfilled his duty to appoint one or more committees in a reorganization case, the United States trustee's relationship to such committee terminates. There is no provision in the Code for his supervision of committees he has appointed.[12]

We agree with this analysis. Subsection (c) of § 1102 sets forth a mechanism for resolving disputes regarding the representativeness of committees.[13] This is critical for it makes clear that although the judge in a non-pilot district, or a trustee, must make certain inquiries into the representativeness of the committee to be appointed in order to properly carry out the ministerial act of appointment, the issues raised by a challenge to representativeness are wholly within the province of the judicial sphere. In this case, it was the Chapter 11 debtors who raised a challenge to the representative character of the committee. While the lower court's comment about the absurdity of a criminal being representative of a creditors committee is correct, it presupposes the truth of the allegations. Moreover, the seriousness of the charge does not justify exceeding the scope of the court's authority or imposing improper burdens on the trustee. The fact is that the debtor's challenge is just another form of a "request by a party in interest" to change the membership of a committee, placing it within the mechanism of § 1102(c). That connotes a judicial determination and carries positively no obligation on the part of the court either to substantiate or investigate the allegations of the requesting party. It is an adversary matter requiring proof on the one side and either acquiescence or defense on the other. It does not require court ordered imput from the U.S. trustee in order to effect the relief requested, nor do we agree with the dissent that any "inherent power" exists in the bankruptcy court to order, at its whim, actions by some third party to aid in the "control [of] proceedings before it" or to "assure the efficient administration of justice".

It is clear that § 1102(c) establishes the means by which a challenge to the representativeness of a creditors committee may be adjudicated. In a non-pilot district, this means the judge must decide the merits of the challenge. Should he also be investigator and prosecutor for the challenging party? Of course not, yet the court below would have the U.S. trustee perform such a function. Is the U.S. trustee's role in the case as administrator somehow different from the role of a judge as administrator in a non-pilot district? Should different duties apply because in one case two people are performing the task of one? We believe that the trustee's administrative role in this instance is no different than that of a bankruptcy judge in a non-pilot district. To hold otherwise would necessarily impose upon the trustee a duty to guaranty the quality of his appointments. No such guaranty was contemplated by the Bankruptcy Code, since the Code provides a dispute resolution mechanism for the parties involved. That is to say, while the U.S. trustee must of necessity make certain preliminary inquiries to satisfy minimum standards of representativeness, he cannot and should not be required to guaranty or insure the representative quality of the committee he appoints. If we say that the duty to appoint carries a corresponding duty to investigate challenges to that appointment,

**10.** 10 B.R. 370, 372.

**11.** H.R.Rep. No. 595, 95th Cong., 1st Sess. 402 (1977).

**12.** Collier on Bankruptcy, Vol. 1 ¶ 6.13[4] (15th Edition 1980).

**13.** Section 1102(c) reads:

> On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

we are asking the trustee (or judge) in some way to guarantee the correctness of his appointments. We do not ask this of bankruptcy judges in non-pilot districts, not because it would conflict with their judicial role, but because the obligation does not exist. Nor should it be placed upon the trustee. He has assumed no greater responsibility for the administration of the bankruptcy estate than the judge had before him, and the courts should not now impose on him a responsibility for which the Code already provides an adequate means for solving the problem.

The foregoing analysis is buttressed by various practical considerations as well. The U.S. trustee is no better equipped to conduct an investigation than is a bankruptcy judge. He must rely on the information he is willingly provided, or the data which the court may order parties to supply. But, if the judicial function is the resolution of disputes, the court should not be involved in the dispute as a collector of evidence. Our judicial system has always been one of pitting adversary against adversary. In that way, the party whose self-interest is at stake is the party who will be presenting the case. The U.S. trustee, however, has no self-interest to protect in this case, nor does he represent any interest which ought to be protected. The mere fact that the debtors have raised allegations about two members of the creditors committee, albeit allegations of criminality, should not of itself compel the court to insure that the allegations are *incorrect*. If these creditors wish to defend against the allegations made so that they might continue to serve on the committee, they should be permitted to do so. However, neither the bankruptcy court nor the U.S. trustee has the resources or the time to investigate every allegation which may bear upon the administration of a case. Where the Code provides a means for judicial resolution of a dispute between certain parties, the dispute should be confined to those parties and the decision based upon the evidence they may adduce. It is improper for the court to

order the trustee, and the trustee has no such duty, to investigate the debtors' allegations. Instead, the debtors are put to their proof.

The foregoing discussion has centered about the first issue presented for appeal: that is, whether § 151102(a) implicitly *requires* the U.S. trustee to investigate complaints about the lack of representativeness on a creditors committee. Our conclusion that no such implicit responsibility exists leaves open the question of whether the court has the authority in any event to order the trustee to act in certain instances. The U.S. trustee does not perform his responsibilities in a vacuum. This is so because we are concerned here with the public administration of otherwise private business matters. If he fails to perform his statutory duties, the bankruptcy court has ample authority under § 105(a) of the Code to order him to act.[14] If he continues to refuse, the court may act in his stead and make whatever other appropriate orders may be necessary. The trustee's performance is essential to the bankruptcy system. Therefore, he can and will be ordered to perform those tasks which the bankruptcy court determines fall within the scope of his responsibility. It is our decision today that the task of investigating the allegations by the debtors regarding the representativeness of the creditors committee was beyond the *scope* of the bankruptcy court's authority, in this instance. We do not accept, however, the view that the creation of the U.S. trustee has somehow stripped the court of the authority to insure the proper administration of a bankruptcy proceeding. Nor do we subscribe to the trustee's argument that the separation of powers doctrine is in any way applicable to this decision or operates to make him immune from the bankruptcy court's orders. We only hold that in this instance the mechanism for bringing the matter before the court already exists, and requires no further action by the U.S. trustee on the matter. Therefore, the deci-

---

14. "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

sion of the bankruptcy court should be vacated and the matter remanded for further hearing on the merits of appellees' allegations.

VOTOLATO, Bankruptcy Judge, dissenting:

I disagree with the majority and would hold that the bankruptcy judge was acting within his authority in ordering the United States trustee to investigate the representativeness of the creditors' committee as it was constituted by the United States trustee.

In this Chapter 11 proceeding, the bankruptcy judge was asked by the Debtor to exercise his power to change the membership of the committee because it was "not representative of the different kinds of claims or interests to be represented." 11 U.S.C. § 1102(c). Specifically, it was requested that two members of the committee be removed because of possible criminal conduct. After hearing, and based on the evidence, the bankruptcy judge ordered the United States trustee to investigate the suitability of the creditors' committee members in question to remain on the committee.

The Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 et seq. (1979), is not explicit as to how the bankruptcy court should exercise its duty under § 1102(c), or how it should deal with problems like the one now before the Court. However, it is clear that "[a] general grant of power, unaccompanied by definite directions as to how the power is to be exercised, implies the right to employ means and methods necessary to comply with statutory requirements." *United States v. Jones*, 204 F.2d 745, 754 (7th Cir. 1953); 67 C.J.S., Officers §§ 192–193 (1978); 63 Am.Jur.2d, Public Officers and Employees § 177 (1972). Here, the bankruptcy judge, conservatively in my view, employed the minimum means necessary to properly exercise his power under § 1102(c), by ordering an investigation of the alleged criminal conduct of certain creditors. As that court pointed out:

The membership of a committee of creditors holding unsecured claims may be changed by the bankruptcy court. The proper exercise of its power presupposes in the court the inherent power to direct appropriate inquiry into the challenged representativeness of the committee. The court may direct the United States trustee to investigate serious charges upon which a demand for removal is predicated. The instant challenges to the representativeness of the committee are of such a nature as to require investigation by the United States trustee.

*In re Kontaratos,* 10 B.R. 370, 7 BCD 430, 432 (Bkrtcy.D.Me.1981).

The United States trustee argues that the theory of separation of powers insulates it from the order in question. I agree with the United States trustee and the majority that the United States trustee's office was created to separate the judicial and administrative functions involved in a bankruptcy proceeding. In this case, however, the judge, after hearing testimony, was performing a judicial function based on evidence received at an adversary hearing. I think that he has both the authority and the duty to order an investigation in the context of the judicial proceeding in question. To hold otherwise would countenance a situation where the United States trustee, who is certainly privy to proceedings before the Bankruptcy Court (although not always a party), and whose actions bear directly on the outcome of such proceedings, would be totally free from control by the Court due to his claim of separation of powers.

In my view, nothing could be further from the intent of Congress. To be sure, the United States trustee as an arm of the executive branch is insulated from Court interference in certain areas.[1] That argument, however, is not relevant here where the United States trustee has created the membership of the very committee which is

---

1. As an example, the United States trustee analogizes his position to that of a United States attorney, and points out that a District Court may not order the United States attorney to "clean up crime" in a given area.

being challenged in this specific case. In the present circumstances, the United States trustee is and must be subject to the Court's inherent power to control proceedings before it in order to assure the efficient administration of justice. *Ex Parte United States*, 101 F.2d 870 (7th Cir. 1939), *aff'd sub. nom. United States v. Stone*, 308 U.S. 519, 60 S.Ct. 177, 84 L.Ed. 441 (1939); *Mirin v. Justices of Supreme Court of Nevada*, 415 F.Supp. 1178 (D.Nev.1976); 46 Am.Jur.2d, Judges § 21 (1969).

In fact, the order in this case does not go as far as the order directed to the United States trustee in the case of *In re Stewart*, 10 B.R. 472, 7 BCD 609 (Bkrtcy.E.D.Va. 1981). That case involved deceptive advertising by an attorney with respect to the cost of legal services, and the Court directed the United States trustee to investigate such conduct in the future and to refer specific cases to the appropriate disciplinary committee of the state bar.

Here the order appears to be even more appropriate. Only a single case is involved, there are specific allegations of misconduct, supported by evidence, and most important, it is the United States trustee's own appointments, made without the benefit of the information later adduced at the hearing, which are being questioned. On the facts before the court, I agree with the bankruptcy judge's conclusion that the responsibility to investigate lies with the United States trustee.

It is the responsibility of the United States trustee, in the first instance, to appoint a representative creditors' committee. It cannot have been the intention of Congress to relieve the bankruptcy court of the responsibility to appoint individuals to serve on creditors' committees, only to impose upon the court the *responsibility to investigate* and the ultimate responsibility to adjudicate the representativeness of the committee. It seems similarly implausible that the power of appointment presently vested in the United States trustee would not import the duty to investigate serious charges respecting the representativeness of the

committee. Any other placement of that responsibility would conflict with the congressional purpose underlying the establishment of the office of the United States trustee.

*In re Kontaratos*, 10 B.R. at 373, 7 BCD at 431 (footnote omitted).

I specifically reject the United States trustee's argument that his duties are completed when he appoints a committee. Certainly the power to appoint a committee includes the duty to make appropriate selections and, therefore, to consider assertions of impropriety brought against his appointments. Similarly, the Court's power to remove committee members must rationally encompass the lesser power to cause an investigation prior to the more extreme judicial act of removal.

Contrary to the view of the majority, I do not find the legislative history of the Bankruptcy Reform Act particularly helpful in this case. Although descriptive of the reasons for placing the internal structure of the United States trustee's office outside the control of the bankruptcy court, it is relatively silent as to their duties vis-a-vis each other within an individual bankruptcy case. The United States trustee asserts that since his role is purely administrative, he therefore may not be called upon to exercise the discretion necessary to undertake the investigation ordered by the bankruptcy judge. That position, however, is not consistent with the adversarial role he often assumes (and properly so) in proceedings in which he regularly appears to contest applications for allowances, to request the appointment of a trustee or examiner, to contest claims of creditors, or to object to the sufficiency of disclosure statements, or to the appointment of certain professionals. Although the distinction between the function of the bankruptcy court and the function of the United States trustee is unclear, I believe the order below struck a proper balance.